1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Ernest Chrzaszcz,
Movant/Defendant
-vs-
United States of America,
Respondent/Plaintiff.

CV-14-0067-PHX-JAT (JFM)
CR-09-1381-PHX-JAT

**Report & Recommendation**
**on Motion To Vacate, Set Aside or**
**Correct Sentence**

## I. MATTER UNDER CONSIDERATION

Movant, following his conviction in the United States District Court for the District of Arizona, filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on January 13, 2014 (Doc. 1, 2). On May 12, 2014, Respondent filed its Response (Doc. 9). Movant filed a Reply on July 18, 2014 (Doc. 12).

The Movant's Motion is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 10, Rules Governing Section 2255 Cases , Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

In their Joint Stipulated Description of the Case filed in the underlying criminal proceeding, the parties described the factual allegations as follows:

> The government has alleged that Ernest Chrzaszcz and Zenon Chrzaszcz participated in a drug conspiracy involving Ted Morawa, Albert Chrzaszcz, Joe Soltys, Holly Merriman and others. The government alleges that a conspiracy to distribute heroin, cocaine and marijuana ran from November 1, 2006 through April 11, 2010. As part of the conspiracy, it is alleged that Ted Morawa and others

1

> would transport illegal drugs from sources of supply in Phoenix and Mexico to other parts of the United States and return with drug proceeds to deliver to the sources of supply. The government further alleges that the defendants possessed with intent to distribute heroin, cocaine and marijuana on or about July 19, 2009.

(CR Doc. 509.)  (The docket in the underlying criminal case, CR-09-1381-PHX-JAT, is cited herein as "CR Doc. ___." Exhibits to the Response herein, Doc. 9, are referenced herein as "Exhibit ___.")

## B. PROCEEDINGS AT TRIAL

On November 2, 2009, the defendant and three others were indicted for violations of Title 21 U.S.C. §§ 841, 846 and 856 and Title 18 U.S.C. §§ 2 and 1956. (CR Doc. 3.) On May 12, 2010, a superseding indictment was filed (CR Doc. 57) which added twelve more defendants to the case and modified charges in the original indictment. Defendant was charged with four counts: (1) Count One – Conspiracy to Possess with the Intent to Distribute Heroin, Cocaine and Marijuana; (2) Count Three – Possession with Intent to Distribute Heroin; (3) Count Four – Possession with Intent to Distribute Cocaine; and (4) Count Five – Possession with Intent to Distribute Marijuana

Movant was arrested on December 3, 2010. (CR Doc. 220, Arrest Warrant Returned.)  He was arraigned, ordered detained, and attorney Loyd Tate was appointed to represent him.  (CR Doc. 214, M.E. 12/6/10.)

Over the course of the next eight months, plea negotiations continued unsuccessfully.

**Proposal for Cooperation Agreement** - In December, 2010, the government contacted Mr. Tate regarding a proposal for cooperation.  Tate advised that "he's just not interested in cooperating," but inquired about a plea offer.  Movant argued his innocence based upon his lack of knowledge of the controlled substances discovered in his semi-truck.  (Exhibit A, Voicemail 12/27/10; Exhibit E, Tate Affid. at ¶ 4-6.)

**First Plea Offer** - On February 16, 2011, the government tendered a plea offer for Movant to plead guilty to Count One, with sentencing provisions for a

2

recommendation for a two-level reduction in the offense level for acceptance of responsibility, plus an additional one-level reduction if the calculated offense level was 16 or more.  (Exhibit B, Email and Plea Agreement.)  Defense counsel reviewed the terms of the offer with Movant on February 24, 2011, advised Movant that the prospects of trial were not promising, and reviewed the potential prison term (20 years) at trial. Movant responded that "unless he was given a plea to the time already served he would not accept a plea agreement."  (Exhibit E, Tate Affid. at ¶ 8.)

Arrangements were made for a meeting between the prosecutor, investigators and Movant.  Movant was transported from the prison and appeared.  Movant and counsel met with the investigators and the prosecutor.  The prosecutor reviewed the charges, evidence and plea agreement with Movant.  The potential at sentencing was reviewed (10 to 20 at trial vs. as low as 5-6 years under the plea).  Counsel urged Movant to accept the offer.  Movant responded that counsel was threatening him with 20 years in prison to get him to take the plea offer. Counsel asked the agents and prosecutor to leave the room and again urged Movant to accept the plea offer.  Movant continued to protest his innocence, and rejected the plea offer.  (Exhibit D, Prisoner Schedule Report; Exhibit C, Report of Investigation 3/10/11; Exhibit E, Tate Affid. at ¶ 7-11.)

**Counter Offer** – Counsel was later advised that Movant's brother would testify against Movant on his knowledge that the drugs were in the truck.  On March 10, 2011, counsel conveyed a counter offer to the prosecutor, offering a plea to possession of marijuana, with a 20-30 month stipulated prison sentence. Although amenable to stipulating to a minor role, on April 1, 2011, the prosecutor emailed a rejection, which counsel relayed to Movant.  (Exhibit E, Tate Affid. at ¶ 12-13; Exhibit F, Emails 3/31/11-4/1/11.)

**Second Plea Offer** – On April 5, 2011, the prosecutor made a second plea offer for Movant to plead to Count One, but reducing the types and quantities of drugs, and adding a recommendation for two level downward adjustment for a minor role.  Counsel again reviewed the offer with Movant and recommended acceptance.  Movant declined

and requested that the charge be modified to refer only to marijuana.  (Exhibit E, Tate Affid. at ¶ 14-17; Exhibit G, Email 4/5/11 and Plea Agreement; and Exhibit H, Voicemail 4/8/11.)

At the hearing on April 11, 2011, the prosecutor observed: "And we have conveyed plea offers.  There's been negotiations on that.  I know that both attorneys have represented -- presented the plea offers to the defendants."  (Exhibit I, R.T. 4/11/11 at 8.)

Movant was advised by the prosecutor and the Court that the plea offer would be expiring.  (*Id.* at 9-10.)

Counsel continued to discuss the plea agreement with Movant, on April 11, 2011, July 19, 2011, August 5, 2011, and October 27, 2011.  (Exhibit E, Tate Affid. at ¶ 16.)

On May 17, 2011, the prosecution emailed counsel and indicated that the government remained open to the plea.  (Exhibit J, Email 5/17/11.)  Counsel responded requesting various records, which were reviewed with Movant, who continued to insist on an offer for time served.  (*Id.*; Exhibit E, Tate Affid. at ¶ 18.)

On August 4, 2011, the prosecution emailed the Court and defense counsel to advise that the government would be willing to consider reopening its plea offer if both Movant and his father agreed to a plea. (Exhibit G, Email 8/4/11; Exhibit E, Tate Affid. at ¶ 18.).)  Movant's father had agreed, but Movant refused.  (Exhibit L, R.T. 8/24/11 at 19-20.)

On August 24, 2011, Movant appeared for a Final Pretrial Conference.  The Court set a plea cutoff date of November 21, 2011, but the prosecutor clarified that the prior attempts at a plea agreement had failed, and there were then no open plea offers, the most recent having expired in July.  (Exhibit L, R.T. 8/24/11.)

On November 16, 2011, Movant appeared for a status conference.    The prosecution clarified the plea cut-off date, but observed:  "not that there are any pleas out to either of these defendants at this time, but if the defendants were requesting any pleas that would be the time that they would have to be entered by that date."  (Exhibit M, R.T. 11/16/11 at 13.)    Nonetheless, at sentencing, the prosecution represented that "the

Government would have given him the benefit of the plea agreement up until the day of trial." (Exhibit N, R.T. 2/21/12 at 11.)

**Trial** – On November 29, 2011, Movant proceeded to trial and was eventually convicted on all charges. (CR Doc. 523, M.E. 11/29/11; CR Doc. 536, M.E. 12/8/11; CR Doc. 12/8/11, Verdict.)

Movant was sentenced on February 21, 2012 to concurrent terms of 262 months. (CR Doc. 639, M.E. 2/21/12; CR Doc. 643, Sentence.)

## C.  PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a direct appeal arguing that there was insufficient evidence to convict him at trial.   The Ninth Circuit rejected the contention, summarizing the evidence as follows:

> Chrzaszcz was apprehended as the passenger of a truck carrying large amounts of heroin, cocaine, and marijuana. He asserts that the only evidence that he was aware of the truck's cargo was a coconspirator's "bare assertion that 'he knew.'" We reject Chrzaszcz's characterization of the evidence. Two coconspirators confirmed that Chrzaszcz knew of the drugs in the truck. One of these coconspirators testified that he personally discussed drug trafficking plans with Chrzaszcz. The government also introduced a recorded phone conversation in which Chrzaszcz discussed cocaine prices with a coconspirator and testimony from law enforcement officers who observed Chrzaszcz taking delivery of marijuana several days prior to his arrest, among other evidence.

(CR Doc. 795, Mem. Dec. at 2-3.) His conviction was affirmed.  (*Id.* at 3.)

## E.  PRESENT MOTION TO VACATE

**Motion** – Movant commenced the current case by filing his Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255  (Doc. 1) and Declaration in Support of § 2255 Motion (Doc. 2), on January 13, 2014.   Movant's Motion asserts a single ground for relief, asserting that trial counsel provided ineffective assistance in failing to adequately advise him on the plea offers, but for which he would have taken a favorable plea agreement.

**Response** - On May 12, 2014, Respondent filed its Response ("Answer") (Doc. 9). Respondent argues that Movant was adequately advised, repeatedly rejected favorable offers in the face of that advice while asserting his innocence, and given his steadfast refusal to accept a plea offer and protestations of innocence there was not a likelihood that different advice would have resulted in him accepting a plea

**Reply** - On July 18, 2014, Movant filed a Reply (Doc. 12). Movant argues: (1) counsel's affidavit should be stricken for containing material misrepresentations, and because it is not made under penalty of perjury; (2) argues the merits of his claims; and (3) argues that he could have sought an *Alford* plea while maintaining his innocence. Movant provides declarations from himself and others in support.

## III. APPLICATION OF LAW TO FACTS

### A.  CONSIDERATION OF COUNSEL'S AFFIDAVIT

Movant contends that trial counsel's affidavit should be stricken because it was not made under penalty of perjury, and because it contains various purported misrepresentations.

### 1.  Sufficiency of *Jurat*

Movant argues that because trial counsel's Affidavit (Exhibit E) fails to indicate that it was made under penalty of perjury, it is deficient and should be stricken.

The Affidavit reflects that counsel's affidavit was made "after being duly sworn." (Exhibit E at 1.) The notary public further indicated that the Affidavit was "Sworn to and Subscribed to before me." (*Id.* at 5.)

The *jurat* is sufficient.

It is true that 28 U.S.C. § 1746, which permits declarations to be used in lieu of sworn affidavits specifies that the declarant's signature must indicate that it is made "under penalty of perjury." No such requirement applies to sworn affidavits. "The *jurat* should show that the statements made in the affidavit were properly sworn to by the

affiant before an authorized officer, but since the *jurat* is evidentiary in character, little formality is ordinarily required of it, and mere clerical errors therein will not affect its validity." 2A C.J.S. Affidavits § 29.

Indeed, 18 U.S.C. § 1621 acknowledges that perjury penalties apply to both declaration sunder penalty of perjury and statements under oath.

Movant references a number of cases with notations that they hold that to be considered statements must be sworn (or under oath) or stated to be made under penalty of perjury. *See e.g. Haouari v. United State*s, 510 F.3d 350, 354 (2d Cir. 2007). Here, that the affidavit was sworn to was sufficient.

## 2. Effect of Alleged Misrepresentations

Movant argues that counsel's affidavit should be stricken because he contends it contains misrepresentations and is a "sham." Indeed, the Court may strike affidavits as "sham" testimony upon making a finding of fact that they flatly contradict earlier testimony in an attempt to create an issue of fact and avoid summary judgment. But that only applies where the affiant is proffering "an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). It is a rule directed at curbing abuses of Federal Rule of Civil Procedure 30(e), which allows a deponent to submit a statement of changes upon reviewing a deposition transcript. "This sham affidavit rule prevents a party who has been examined at length on deposition from rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony, which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) *cert. denied,* 133 S. Ct. 2026 (2013) *reh'g denied,* 134 S. Ct. 33 (2013) (internal quotations omitted).

Here, Movant does not point to prior deposition testimony by trial counsel, nor even show that he has been deposed. Rather, Movant simply argues that other evidence impeaches counsel's statements. That is not sufficient to strike an affidavit under the

"sham affidavit" rule.

Moreover, the falseness of the alleged misrepresentations is not established by the record.

In his Reply, Movant points to a purported assertion in counsel's affidavit that the plea offer discussed on March 10, 2011 with the prosecution included an agreement to a minimal participant role, when no agreement to that role was reached until April 5, 2011. (Reply, Doc. 12 at 16-17.)  However, counsel's affidavit does not reflect that the plea agreement stipulated to such a finding, but simply that the court could make such a finding.  Counsel avows:

> 9. On March 10,2011 I met with Ernest Chrzaszcz, Mr. Larson, DEA Special Agents Mike Burke, and Cecilia Strabala at the U.S. Marshal l's Office at the Federal District COUl1 Building for an informal settlement conference. During that meeting I was present when Mr. Larson explained...that the possible range under the plea agreement could be as low 5-6 years **if the court found the defendant to be a minimal participant**.

(Exhibit E, Tate Affid. at ¶ 9 (emphasis added).)  Thus, counsel has not avowed that there was an agreement to minor role in that plea offer, but that it was a potential reduction in the sentence available under the plea then offered.

Next, Movant points to counsel's assertions about reviewing the evidence with Movant, and points out that at the time and thereafter counsel was asserting to the prosecutor and the court that he was still reviewing the evidence. (Reply, Doc. 12 at 19.) Movant simply misunderstands the nature of trial preparation.  Counsel routinely will conduct an initial review of the prosecution's case to evaluate the likelihood of success at trial, long before completing the in-depth, line by line, word by word, review which is part of the preparation for trying a case.  The undersigned does not understand counsel to be avowing that he reviewed every jot and tittle of evidence with Movant, but that he reviewed the significant evidence pointing to Movant's guilt – e.g. the circumstances of Movant's apprehension, the results of surveillance, and the phone intercepts implicating Movant.  Effective counsel may spend significant amounts of time on the jots and tittles in preparation for trial in the hopes of winning small battles at trial (e.g. impeaching a

witness, etc.) while at the same time knowing that the war is likely lost because of the weight or power of the evidence against his client.

Next, Movant points to counsel's assertion that he had been told that Movant's brother would testify against Movant.  (Reply, Doc. 12 at 18-19.)  Counsel avows:

> 12.  AUSA Marrri Guerrero advised me that Albert Chrzaszcz, Ernest Chrzaszcz's brother, would be cooperating against Ernest and that he would testify that he knew the drugs were in the semi-truck. I later contacted Ms. Guerrero on March 10, 2011…
> * * *
> 14.  On April 5, 2011 I received an email from USUA Brian Larson …[with] a revised plea agreement. I explained to him the terms of the plea agreement…and the evidence that the United States would use at trial including the fact that his brother was now cooperating.

(Exhibit E, Tate Affid.)   Movant asserts that in an email dated March 31, 2011, prosecutor Guerrero reflected that Albert had not committed to testifying against Movant.  AUSA Guerrero recorded in an email to AUSA Larson:

> I just spoke w/ Lloyd Tate - here is the synopsis: (1) I told him that Albert is cooperating…Tate also said something to the effect of "well if you own brother is going to testify against you, you have problems", I told him that I wanted to clarify - Albert did not say specifically that he was going to testify against his brother, but that all options were left on the table.

(Exhibit F, Email 4/1/11 (Larson to Guerrero, included reply).)    Rather than demonstrating a misrepresentation in counsel's Affidavit, the record reflects a misunderstanding between the prosecution and defense counsel in March, 2011 as to whether Movant's brother was generally cooperating and was expected to testify against Movant, or whether he had specifically agreed to testify against Movant.

Finally, Movant points to counsel's avowal to discussing a plea offer for 36 months, when such offer was never made.  However, counsel's avowal states:

> 16. I spoke with Ernest Chrzaszcz regarding the revised plea agreement on a number of occasions, including 4/11/11, 7/19/11, 8/5/11, 10/27/11. I thought it simply ridiculous for Mr. Chrzaszcz to risk being imprisoned for over 20 years when the plea offer would [have] **allowed him to be imprisoned for less than 36 months**.

(Exhibit E, Tate Affid. (emphasis added))  The import of counsel's avowal is not that an offer was made with a stipulated sentence of 36 months, but that the offers made had the

9

potential for such a term of imprisonment if a favorable sentence were imposed under the terms of the agreements (*e.g.* if Movant were sentenced under the guidelines pursuant to the safety valve of 18 U.S.C. § 3553(f), received a minimum or minor role, reductions for acceptance of responsibility, etc.). Moreover, the reference by counsel is not to the sentence itself, but the time Movant would be imprisoned, which would be subject to good time credits, s*ee e.g.* C.F.R. § 523.20 (54 days of good conduct time credits for each year served); 18 U.S.C. § 3624(b) (same), credit for time served,[1] etc. Thus, Movant fails to show any misrepresentation in this regard as well.

Accordingly, even if this Court could strike counsel's Affidavit on the basis of mere misrepresentations, Movant has failed to show that such are contained in the affidavit.

## B.  REQUIREMENT FOR EVIDENTIARY HEARING

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.' " *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir.1994) (quoting 28 U.S.C. § 2255). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Mejia-Mesa*, 153 F.3d 925, 931 (9th Cir.1998). Mere conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir.1980), *cert. denied*, 451 U.S. 938 (1981). "Mere conclusory allegations do not warrant an evidentiary hearing." *Shah v. U.S.,* 878 F.2d 1156, 1161 (9th Cir. 1989).

The Ninth Circuit has recognized that even when credibility is at issue, no

---

[1] Movant represents that he spent time in custody by state authorities following his initial arrest for the events underlying this proceeding, was again arrested in Europe on April 18, 2010, and extradited on December 3, 2010.  (Declaration, Doc. 2 at 1-2.)  Movant was potentially entitled to credit for time served for all such time in custody, totaling 12 months or more.  *See*  18 U.S.C. § 3585.

evidentiary hearing is required if it can be "'conclusively decided on the basis of documentary testimony and evidence in the record.'" *Shah v. U.S.*, 878 F.2d, 1156, 1159 (9th Cir. 1989) (quoting *U.S. v. Espinoza*, 866 F.2d 1067, 1069 (9th Cir.1989)). In addition, judges may use discovery, documentary evidence, and their own notes and recollections of the plea hearing and sentencing process to supplement the record. *Shah*, 878 F.2d at 1159. "Judges may also use common sense." *Id*. The choice of method for handling a § 2255 motion is left to the discretion of the district court. *See id*. (citing *Watts v. United States*, 841 F.2d 275, 277 (9th Cir.1988)).

Here, as discussed hereinafter, the Movant's claims are supported only by conclusory statements, and may be conclusively decided on the basis of the record available. Accordingly, the undersigned concludes that an evidentiary hearing on Movant's claims is not required.

## C. MERITS OF INEFFECTIVENESS CLAIM

### 1. Applicable Standard

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on such a claim, Movant must show: (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 687-88. Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Id*. at 697.

The court hearing an ineffective assistance of counsel claim must consider the totality of the evidence with an eye toward the ultimate issue of whether counsel's conduct so undermined the functioning of the adversarial process that the proceeding lacked fundamental fairness. *Id*. at 686; *Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990)(observing that counsel cannot be labeled ineffective for failing to raise issues

which have no merit); *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir.1985) (failing to raise meritless argument on appeal does not constitute ineffective assistance of counsel).

In the unique context of a claim of ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, to establish the requisite prejudice "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 132 S.Ct. 1399, 1409 (2012). "Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Id.*

Movant alleges that trial counsel performed deficiently in a laundry list of ways:

> CJA Counsel rendered deficient performance for, inter alia, failing to: (1) recognize trial was nearly impossible to win; (2) advise him of the true risks of going to trial; (3) provide him with a full understanding of the relevant law, application of the law to his conduct, and how the evidence would impact upon his likelihood of conviction and sentence exposure; (4) inform him of the basic structure and mechanics of the Sentencing Guidelines and true sentence exposure; (5) provide him with a full understanding of the options and benefits of pleading guilty; (6) provide his true sentence exposure versus signing plea Agreement; (7) pursue a plea agreement, and alternatively, advise him about the benfits of pleading guilty to the indictment; (8) inform him correctly of the true sentence disparity between pleading guilty versus proceeding to trial.

(Motion, Doc. 1 at 5.)

## 2.  Prospects at Trial

Petitioner asserts three arguments concerning counsel's advice regarding his prospects at trial.  He argues counsel was ineffective for failing to: "(1) recognize trial was nearly impossible to win; (2) advise him of the true risks of going to trial;  (3) provide him with a full understanding of the relevant law, application of the law to his conduct, and how the evidence would impact upon his likelihood of conviction and sentence exposure." (Motion, Doc. 1 at 5.) (Those portions of these arguments related

to sentencing are discussed separately hereinafter.)

Movant avows in his Declaration that:

    3. I am not schooled in the law nor have any training, and I have a High School Diploma.

    * * *

    16. Throughout the entire process, Tate never explained to me the low burden the Government needed to prove in order to justify a conviction for conspiracy.

    17. Based on Tate's evaluation of the case, Tate felt we had a decent chance winning at trial.

    * * *

    19. Because of the distorted view that Tate provided to me with regard to the applicable law regarding a conviction of conspiracy) we chose to proceed to trial.

    20. Although I was hesitant to proceed, I relied on Tate's evaluation of the facts.

    21. Throughout the process, I asked Tate several times for my discovery materials) so I could better understand the facts of my case. Counsel never provided such materials.

    22. Tate also neglected to apprise me of other evidence (i.e.. phone calls, surveillance, etc) that the Government would be presenting in my prosecution.

    * * *

    25. Tate never advised me that mere testimony of a co-conspirator would be enough to sustain a conviction of conspiracy.

    26. I inquired to Tate as to what we could do to mitigate my sentence.

    27. Tate made it clear that are [sic] chances at trial were favorable.

    * * *

    31. Due to Tate's interpretation of the applicable law regarding a conspiracy, I was under the impression that I did not further or advance the conspiracy.

    32. Had I known what the proper applicable law concerning a conspiracy and how the Government could establish my participation, I would have pled guilty.

    * * *

    35. In preparation for trial, Tate did not advise me regarding the testimony of other co-conspirators and that their mere testimony would be enough to sustain a conviction of conspiracy.

    36. Tate did not further advise me that although I may not exactly known what the specific contents of van, the simple act of me picking it up, would show my involvement in the conspiracy.

    * * *

    39. Tate did not advise me of all the witnesses that would be testifying on behalf of the Government.

    40. Tate did not advise me that even though I did not know most of the others involved in the conspiracy, that their mere testimony would be found credible.

    41. Tate did not advise me that their testimony was induced by the government for [leniency] in their sentence.

    42. Tate gave me the impression that since the driver, Jason L. Shawd's charges had been dismissed, I to [sic] would have the

same outcome.

(Declaration, Doc. 2.)

In his Reply, Movant clarifies that he is asserting counsel failed to advise Movant:

> (b) circumstantial evidence alone was sufficient to sustain a conviction under 21 U.S.C. § 846;
>
> (c) to sustain a drug conviction under 21 U.S.C. § 846, the government must prove that (1) there was an agreement to violate the drug laws, (2) the defendant had knowledge of and intent to join the conspiracy, and (3) he participated in the conspiracy;
>
> (d) even a tactic or mutual understanding among the conspirators is sufficient to prove the first element of conspiracy;
>
> (e) a defendant's connection to the conspiracy need only be slight, he need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement;
>
> (f) a defendant's knowledge and or participation in the conspiracy may be inferred from his actions and reactions to the circumstances.

(Reply, Doc. 12 at 9.)

In contrast, trial counsel avows:

> 6.  From the beginning of the case Ernest Chrzaszcz claimed his innocence based on lack of knowledge of the drugs in his semi-truck and indicated that he did not want to cooperate.
>
> * * *
>
> 8. On February 16, 2011 I received an email from Mr. Larson providing a proposed plea agreement. I advised Mr. Chrzaszcz of this plea agreement on 2/24/11. I fully explained the terms of the plea agreement, the possible range of penalties he could be facing if he would found [be] guilty at trial, and the evidence the United States would use at trial. I told Ernest Chrzaszcz the possible range of penalties he could receive if found guilty at trial was over 20 years imprisonment. I again advised him that I did not think we would prevail at trial and contrasted the prison time I estimated he would receive at trial verses the much smaller amount he would receive jf convicted. Mr. Chrzaszcz insisted that unless he was given a plea to the time he had already served he would not accept a plea agreement.
>
> * * *
>
> 9. On March 10, 2011 I met with Ernest Chrzaszcz, Mr. Larson, DEA Special Agents Mike Burke, and Cecilia Strabala at the U.S. Marshall's Office at the Federal District Court Building for an informal settlement conference. During that meeting I was present when Mr. Larson explained to the defendant the charges and evidence in the case and the plea agreement the United States was offering. Mr Larson explained the possible statutory ranges, likely range under the plea agreement and after trial. …Again, I urged Mr. Chrzaszcz to accept the plea agreement however Mr. Chrzaszcz disagreed with my advice.
>
> * * *
>
> 11. After Mr. Larson spoke with the defendant, I had Mr.

14

Larson, Special Agent Burke, and Special Agent Strabala step out while I spoke with Ernest Chrzaszcz privately. Again, I explained to Mr. Chrzaszcz his option to accept the plea agreement or the option to take the matter to trial. Again, urging him to accept a plea agreement. Mr. Chrzaszcz became angry during our conversation again insisting he was innocent. After that discussion, Ernest Chrzaszcz rejected the plea agreement and wanted to proceed to trial.

12.    AUSA Marrri Guerrero advised me that Albert Chrzaszcz, Ernest Chrzaszcz's brother, would be cooperating against Ernest and that he would testify that he knew the drugs were in the semi-truck. I later contacted Ms. Guerrero on March 10, 2011. During that conversation, I informed Ms. Guerrero that Ernest Chrzaszcz said he would plead to only possession of Marijuana and not cocaine and heroin with a 20-30 month stipulated range of imprisonment. On April 1, 2011, Ms. Guerrero emailed me and informed me that Ernest Chrzaszcz's counteroffer of [sic] to plead to marijuana and a 20-30 month sentence was rejected.

(Exhibit E, Tate Affid.)

At sentencing, Movant continued to maintain his innocence:

A week before trial my brother was interviewed by Mr. Larson and he stated that he has never -- he has never told me or Jayson about the drugs, but when he testified in  trial he said that I knew.  It just clearly shows that he lied.

Me and Jayson Shawd were both used and lied to for their dirty work because we didn't know anything about their business and we are the victims in this case.

My brother has told me that in order for his plea agreement to be valid he had to satisfy the prosecutor and say that I was involved to save himself. When my brother and Ted talked on the phone on July 20th of 2009 that's the day after me and Jayson Shawd were arrested they clearly said that we were both not guilty, that we didn't know anything.

Why would they say that when they had no reason to?  They were free and had no idea the conversation was being recorded. My brother has never told me anything, he knew better that if he did tell me that I would never agree to take those drugs, so he kept it a secret.

                                        * * *
I feel that I was found guilty not based on facts or truth but only on assumptions and lies. I've never in my life transported drugs or belonged to any organization.

I feel like I got punished for testifying and telling the truth. The only reason I didn't sign my plea agreement because I'm innocent, and also my attorney misled me by telling me that if I lode [sic] trial I would be looking at close to 10 years, if he would tell me that I'd be facing over 20 years then I would sign a plea and not take the huge risk even though I'm innocent.

(Exhibit N, R.T. 2/21/12 at 7-8.)

**Deficient Performance** - The undersigned finds no credibility to Movant's first

15

and second asserted deficiencies regarding counsel's advice concerning trial, and a portion of the third.  The record reflects that counsel believed and communicated to Movant that the trial was nearly impossible to win, and that the risks of going to trial were grave.  Movant's assertion that "Tate felt we had a decent chance winning at trial" (Declaration, Doc. 2 at ¶ 16) sounds familiar from instances where an attorney is attempting to provide a fair evaluation of the evidence and defenses without destroying his client's trust, and the client hearing only what he wanted to hear.

Movant protests that counsel could not have provided such an evaluation given that he was simultaneously requesting continuances to complete his review of the evidence.  However, this was not necessarily a complicated case as much as a tediously voluminous one.  At the final pretrial conference, counsel explained to the Court:

> The posture that it's taken, Judge, is that in preparing for this trial and going through the CDs it has just taken a long time to go through - -  there are thousands and thousands of documents that I have already gone through. I have met with the prosecutor on a couple of occasions , and putting this case together, the prosecutor, which I saw in his office , and I'll let him speak to that, that there is four or five boxes of materials. I've had to go through materials where there's an investigation in Chicago and then there's an investigation here and trying to put all of this together.

(Exhibit L, R.T. 8/24/11 at 5.)  In the earlier pretrial conference, the prosecutor had summarized the struggles with the record:

> MR. LARSON : Your Honor, if I could, in addition to the documentary evidence, there was a five month wiretap investigation at times with several telephones being intercepted.  So when we talk about the 45 disks , there is a disk containing the reports, there was search warrant evidence as well provided, photographs, but the lion's share of those disks are the calls, many of which occurred in Polish with a translation prepared by DEA or a summary prepared by DEA that's been provided to the defense as well.
>
> So there are some logistical issues that Mr. Tate has encountered in reviewing the evidence. I believe that comes from the nature of him having to glean through thousands - - and I would say - - we have the case agents here, but there's thousands and thousands of phone calls, some in Polish, some in English, some in Polish and Spanish, but we had both Spanish and Polish interpreters working during the interceptions on this case, and that was the basis for us designating this a complex case early on before Mr. Ernest Chrzaszcz was extradited from Poland, was to give defense counsel ample time to review.  While the case itself was not overly complex,

the evidence and the amount of evidence that we had in foreign languages was large.

(Exhibit I, R.T. 4/11/11 at 7.)   Defendants and counsel regularly evaluate a case for plea agreement purposes long before trial preparation is complete.  It is unpersuasive that in a case such as the instant one that counsel had concluded the prospects at trial were dismal, long before he completed the arduous task of preparing for this week long, multi-language trial.

Further, the record reflects that counsel reviewed with Movant the evidence and its impact upon the likelihood of conviction and sentence exposure.  Aside from counsel's avowals, the pattern of conduct in counsel's contemporaneous correspondence with the prosecution and permitting Petitioner to participate in direct conversations with the prosecutor and investigating agents are consistent with an attorney with a losing case, attempting to convince his client to take a highly favorable plea offer by providing him a clear picture of the evidence against him and his exposure at trial.

Accordingly, the undersigned concludes that Movant has failed to show deficient performance with respect to these assertions.

It is true that there is nothing presently in the record to indicate that counsel provided Movant "with a full understanding of the relevant law, application of the law to his conduct," rather than just counsel's opinions on the prospects of the case.  (Petition, Doc. 1 at 5.)  For example, there is nothing to show that counsel communicated the sufficiency of circumstantial evidence, the limited evidence necessary to establish a conspiracy, and the lack of need to actively participate in every phase of the conspiracy, etc.

Nonetheless, whatever deficiencies may or may not have existed in counsel's explanation of the calculus behind his conclusion that Movant would not succeed at trial, Movant had been given clear advice that he would likely lose and should accept the plea offer.  It would defy common sense to assume that Movant was fixated upon such potential, though ineffective, legal defenses at trial.  Movant admits that he had no legal training to have a basis to reject counsel's ultimate analysis based upon technical

17

evaluations of the law and evidence.  Movant makes no suggestion, for example, that counsel discussed such defenses, but provided incorrect advice, or that counsel had some reason to believe that Movant was relying upon such defenses in his decision to reject the plea offers and yet counsel failed to dissuade Movant from relying upon them.

At best, Movant asserts that his decision to reject the plea was based on "Tate's interpretation of the applicable law regarding a conspiracy."  (Declaration, Doc. 2 at ¶ 30-31.)  However, Movant makes no allegations beyond this conclusory statement to establish that counsel affirmatively misrepresented the law.

Any counsel evaluating a case may consider a myriad of potential legal issues, and ultimately conclude that they are not sufficiently applicable to warrant confusing an untrained client by raising them to the client and then dismissing them as untenable.  For example, counsel does not avow that he explained a Fourth Amendment search and seizure defense, or an extradition defense, or a hearsay defense, only to dispose of them as untenable. Reasonable counsel does not engage in a pointless dissertation of legal theories with his client, but provides a cogent, understandable analysis based on factors relevant to his client evaluating a plea agreement.  The record indicates that it was defense counsel did in this case.

Accordingly, the undersigned finds no basis to conclude that counsel was deficient if he did, in fact, fail to discuss such issues with Movant.  To the contrary, the circumstances suggest that Movant has, after the fact, developed potential but unsuccessful defenses solely to support a claim of ineffective assistance.

**Prejudice** - The record reflects that prior to trial and even at sentencing, Movant was fixated upon his assertion that he was unaware that there were drugs in the truck as the basis of his innocence, and his intent on not providing cooperation to the government.  Thus, the undersigned finds no credibility to Movant's assertion that had he been provided further instruction on the technicalities of proof for the conspiracy charge, that he would have reached a different conclusion and would have accepted the plea offer. Accordingly, Movant has failed to establish prejudice from any such

deficiencies in counsel's advice regarding such matters.

For the same reasons, the undersigned concludes there is no basis for finding a reasonable probability that had counsel offered additional advice regarding the likelihood of losing at trial, the risks of losing, and the evidence against Movant, Movant would have elected to accept the plea offers.

With regard to the evidence against Movant, any deficiency of counsel would have been further offset by knowledge in that regard provided by the prosecutor and investigating agents during their meeting with Movant. This would further make unlikely the possibility of a prejudicial effect from any deficiency in this regard by counsel.

### 3.  Advice re Sentencing

Movant argues that trial counsel was deficient for failing to: "(4) inform him of the basic structure and mechanics of the Sentencing Guidelines and true sentence exposure"; "(6) provide his true sentence exposure versus signing plea Agreement"; and "(8) inform him correctly of the true sentence disparity between pleading guilty versus proceeding to trial." (Motion, Doc. 1 at 5.)

**Deficient Performance** - Based upon the record, the undersigned finds with regard to assertions (6) and (8) that Movant was repeatedly made aware of his sentencing exposure at trial and the advantages of sentencing under the plea offers.

Advice re Exposure at Trial - Movant declares that "Tate based my sentence exposure, if we were unsuccessful at trial at ten (10) years incarceration." (Declaration, Doc. 2 at ¶ 18.)  Indeed, Movant argued at sentencing that he was told by counsel that he only faced 10 years.

> The only reason I didn't sign my plea agreement because I'm innocent, and also my attorney misled me by telling me that if I lode trial I would be looking at close to 10 years, if he would tell me that I'd be facing over 20 years then I would sign a plea and not take the huge risk even though I'm innocent.

(Exhibit N, R.T. 2/21/12 at 8.)

Counsel avows that after the February 16, 2011 plea offer: "I fully explained the

19

terms of the plea agreement, the possible range of penalties he could be facing if he would [be] found guilty at trial, and the evidence the United States would use at trial. I told Ernest Chrzaszcz the possible range of penalties he could receive if found guilty at trial was over 20 years imprisonment." (Exhibit E, Tate Affid. at ¶ 8.)

The plea agreements, which counsel avows he reviewed with Movant, reflected a minimum sentence of 10 years, and a maximum of life. (Exhibit B, Plea Agreement at 2.) (*See also* Exhibit G, Plea Agreement at 2.) Movant protests he never saw the plea agreements. (Declaration, Doc. 2 at ¶ 14.) Even if true, presentation of the plea agreement itself was not necessary for counsel to adequately advise Movant on his exposure at trial.

At his sentencing, Movant acknowledged being aware of a sentence greater than 10 years (albeit not 20 years):

> In the beginning of 2011 when I was interviewed by Mr. Larson I was threatened that it I don't give him information on Jayson Shawd, which is a very close friend of mine and been more like a brother to me for half of life and I told Mr. Larson that we didn't know anything so Mr. Larson got very aggressive and said that I will spend 15 years in prison.

(Exhibit N, R.T. 2/21/12 at 6.)

Movant argues that counsel's failure to refute the assertion at sentencing that counsel predicted 10 years establishes Movant's credibility. However, it is unsurprising that counsel would choose to not attack Movant's credibility at sentencing, even if Movant broadly misrepresented counsel's advice. The statements made by Movant, read from his letter to the Court, were not being presented by counsel. Indeed, Movant had refused to allow counsel to review his statement before delivering it. (*See* Exhibit N, R.T. 2/21/12 at 5-6.) Thus, counsel was not tasked with the ethical obligation of correcting any known factual misrepresentations, and would have been understandably reticent to torpedo his own client's attempt at explaining his insistence on refusing to take a plea offer and accept responsibility.

Movant himself objected that he was "threatened" with a 20 year term in prison. Counsel avows: "At the end of the presentation, Mr. Chrzaszcz accused Mr. Larson of

threatening him with 20 years of prison to get him to plead guilty." (Exhibit E, Tate Affid. at ¶ 10.)   Counsel avows that at the March 10, 2011 meeting with the prosecutor and case agents:

> "The possible range after trial was presented as more than 20 years but no less than 10 years because of the mandatory minimum. He also explained that the possible range under the plea agreement could be as low 5-6 years if the court found the defendant to be a minimal participant."

(Exhibit E, Tate Affid. at ¶ 9.)

Based upon the foregoing, the undersigned finds the record conclusive that Movant was made aware that he faced a sentencing range of 10 to 20 years in prison, and that counsel was not deficient in this regard.

Bad Prediction Not Deficient Performance - Further, even if it were assumed that counsel had predicted Movant's sentencing exposure at trial as 10 years rather than 20, such discrepancy would not amount to deficient performance. In *U.S. vs. Garcia*, 909 F.2d 1346 (9th Cir. 1990) the Ninth Circuit held that an erroneous prediction of a sentence by a defense attorney did not rise to the level of constitutional deficient representation, and thus did not render a plea based upon such erroneous prediction involuntary.

Cases both prior to and since *Garcia* have differentiated between simple errors in predictions and a gross mischaracterization of the likely outcome.  For example, in *U.S. vs. Michlin*, 34 F.3d 896 (9th Cir. 1994) the Ninth Circuit recognized that the court has "held that 'an erroneous prediction by defense attorney concerning sentencing does not entitle a defendant to challenge his guilty plea,' although an exception might be made in a case of 'gross mischaracterization of the likely outcome.'" *Michlin*, 34 F.3d at 899 (citations omitted).

In *Iaea v. Sunn*, 800 F.2d 861 (9th Cir. 1986) defense counsel represented to the defendant that a guilty plea would give him a chance to receive probation.  That advice was defective because of mandatory minimum sentences which resulted in his receiving life sentences. The court found that such a gross mischaracterization (probation v. life

21

sentences) established defective performance by counsel and remanded the case for a determination on the prejudice component of the ineffective assistance claim. *Id.* at 865-66. *See also Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990), *cert. denied*, 499 U.S. 940 (1991)(no ineffectiveness where actual sentence was three years longer than attorney predicted).

In *Womack v. Del Papa*, 487 F.3d 998 (9th Cir. 2007), counsel had predicted a sentence upon pleading guilty of 30 to 40 years, and instead the defendant received eight life terms without parole. The Ninth Circuit distinguished *Iaea* (probation v. life), and found the plea nonetheless voluntary.

Here the difference between a prediction of 10 years and an eventual sentence of 262 months is far closer to the 30 versus life in *Womack*, than the probation versus life in *Iaea*. It was the difference between a minimum sentence and the guidelines sentence ultimately imposed. Indeed, at sentencing counsel continued to ask the court to impose the minimum term of ten years. (Exhibit N, R.T. 2/21/12 at 9-10.) A variance in prediction between a minimum sentence and a guidelines sentence would not establish a gross mischaracterization of the possible outcome.

Accordingly, Movant has failed to show deficient performance with regard to any disparity in counsel's sentencing prediction and Movant's actual sentence.

<u>Explanation of Sentencing Guidelines</u> - With regard to the assertion that counsel failed to explain the structure and mechanics of the sentencing guidelines, Movant proffers no reason why such advice was required. Movant does not suggest, for example, that there was something peculiar about his sentencing exposure that mandated advice about the method of calculation of the sentence, as opposed to the end results of those calculations. Trial counsel is not tasked with providing a legal education for his client, but with using his professional judgment to assist his client in making informed decisions about the representation.

**Prejudice** - Here, Movant was determined that he would maintain his innocence. "Mr. Chrzaszcz always insisted the Government give him a plea offer to time served."

22

(Exhibit E, Tate Affid. at ¶ 18.)   "Mr. Chrzaszcz said he would plead to only….a 20-30 month stipulated range of imprisonment."  (*Id.* at ¶ 12.)  Movant even declined to accept a plea offer combined with an offer to allow his father to plead to a very favorable misprision of a felony.  (*Id.* at 19-21; Exhibit L, R.T. 8/24/11 at 18-19.)   Movant admitted at sentencing that he was unswayed by the plea offers (of 5 to 6 years), but argued he would have been swayed if he had known he risked twenty years in prison, rather than ten.   That contention is disproven by the record.   Likewise, the record disposes of Movant's contention that his "mind was never closed to the idea of pleading guilty." (Declaration, Doc. 2 at ¶ 59.)

Further, Movant was advised by the prosecutor about his exposure at trial. Accordingly, even assuming counsel had given Movant incorrect advice that he faced only 10 years at trial, and assuming that this was deficient performance, the undersigned finds no probability that Movant would have accepted the plea offers but for such advice.

**4.  Advice re Benefits of Plea**

Movant argues counsel failed to "(5) provide him with a full understanding of the options and benefits of pleading guilty" and to "(7) … advise him about the benefits of pleading guilty to the indictment." (Motion, Doc. 1 at 5.) To the extent that Movant refers to his allegations that counsel was deficient in advising him on the risks of trial, the evidence, applicable law, and his relative sentencing exposure, those claims are addressed in subsections 2 and 3 hereinabove.

To the extent that Movant intends this allegation to go beyond those allegations, Movant fails to identify the nature of the deficiency.  Thus, the claim is conclusory and thus without merit.  "It is well-established that mere conclusory allegations are not sufficient to warrant relief under a 2255 motion."  *Stein v. U.S.,* 390 F.2d 625, 627 (9th Cir. 1968).

Accordingly, this portion of the claim is without merit.

### 5.  Pursuit of Plea Agreement

Finally, Movant argues that counsel was ineffective for failing to "(7) pursue a plea agreement." (Motion, Doc. 1 at 5.)  In his Reply, Movant elaborates that counsel should have pursued a plea of *nolo contendere,* or *Alford* plea.  (Reply, Doc. 12 at 11-12 (citing *North Carolina v. Alford*, 400 U.S. 25 (1970).

As discussed in *Missouri v. Frye*, 132 S.Ct. at 1410, "a defendant has no right to be offered a plea." Thus Movant bears the burden of establishing that such a plea would have not only been acceptable to the court, but would have been completed by the prosecution.  *Id.* at 1409-1410.  Movant proffers nothing to suggest that such an offer would have been accepted by the prosecution.  In light of the highly favorable nature of the plea already offered, the undersigned finds no reason to believe that an offer (even one on the all the other terms offered by the prosecution) subject to an *nolo contendere* plea would have been accepted by the prosecution.

Further, Movant admits that pursuing such a plea would have eliminated any of the benefit normally attendant with the acceptance of responsibility on a guilty plea.  Thus, the outcome of such a plea would have been worse than what was rejected by Movant.

Finly,, Movant proffers nothing to support a contention that there was some unique value to Movant in a *nolo contendere* plea which would have increased the likelihood that such a plea would have been accepted by Movant.

Accordingly, Movant fails to establish that counsel was deficient in pursuing such a plea, or that prejudice resulted therefrom.


### 6. Summary

Movant fails to show that trial counsel performed deficiently, or that prejudice resulted.  Accordingly, Ground One (the sole ground for relief) and the Motion to Vacate are without merit.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2255 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Motion to Vacate is brought pursuant to 28 U.S.C. § 2255.   The recommendations if accepted will result in Movant's Motion to Vacate being  resolved adversely to Movant.   Accordingly, a decision on a certificate of Appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court=s assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on the merits. Under the reasoning set forth herein, the claims are plainly without merit and jurist of reason would not find it debatable whether the Motion states a valid claim. Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Motion, a certificate of

appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed January 13, 2014 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 10, Rules Governing Section 2255 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: December 17, 2014

14-0067r RR 14 12 05 on HC.docx

James F. Metcalf
United States Magistrate Judge